Filed 8/19/22  In re Michaela H. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re MICHAELA H., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOSEPH A., <br><br> Defendant and Respondent. | A163620 <br><br> (Alameda County Super. Ct. No. JD-033382-01) |

Joseph A. (father) appeals from the juvenile court's disposition order concerning Michaela H.  Father contends the Alameda County Social Services Agency (Agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code, § 224 et seq.).[1]  We agree.  However, we conditionally affirm the juvenile court's disposition

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

order and remand only for compliance with ICWA and related California law.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Our factual and procedural summary focuses on facts relevant to resolution of the ICWA issue and other limited background information to provide relevant context. On March 30, 2021, the Agency filed a juvenile dependency petition under section 300, alleging two-year-old Michaela H. suffered serious physical harm due to ongoing substance abuse by her mother[3] and Joseph A., who was her alleged father. The petition alleged that Michaela H. was severely physically harmed when she ingested fentanyl while under mother's care and that mother was arrested for child endangerment and possession of a controlled substance. The petition further alleged Michaela H. had no provision for support because father's whereabouts and ability to provide care and support were unknown. The petition stated the Agency had not yet inquired about whether Michaela H. was a member of an Indian tribe, or eligible for membership and the biological child of a member, because mother was incarcerated and father's whereabouts were unknown.

The April 1, 2021, detention report stated mother remained incarcerated and the Agency was unable to interview her due to COVID-19. The Agency contacted the maternal grandmother, who provided a telephone number for father. The Agency social worker left a message for father. Regarding ICWA, the detention report stated it "does or may apply" and that further inquiry is needed from "the mother and the alleged father." Neither mother nor father appeared at the April 1, 2021, detention hearing. The

_____

[2] Father does not contest any other findings in the dispositional order.

[3] Mother is not a party to the appeal.

2

juvenile court detained Michaela H. and ordered the Agency to provide DNA testing for father.

The April 21, 2021, jurisdiction/disposition report states ICWA may apply. The Agency reported that in connection with a prior investigation in March 2020, mother denied having Native American ancestry. Further inquiry was needed from father. The Agency further reported that it held an emergency removal child and family team meeting on March 31, 2021, which was attended by father, the maternal grandmother, the maternal uncle, and the paternal aunt of Michaela H.'s half sibling. Although father reportedly agreed to attend the detention hearing and a case plan child and family team meeting, he did not do so. The Agency further reported that it interviewed mother, father, the maternal grandmother and the maternal uncle. The report does not state that the social worker made ICWA inquiries of any of them.

On April 22, 2021, father appeared at the contested jurisdiction/disposition hearing. He had not yet completed the DNA test, and the matter was continued. He was not asked at the hearing about Native American ancestry. Mother remained incarcerated and did not appear.

On May 25, 2021, the Agency filed an addendum report. Again, the report stated ICWA may apply. It stated mother previously denied Native American ancestry on March 3, 2020, in connection with a prior investigation. When the Agency asked father about Native American ancestry, he reportedly replied, " 'I assume,' " but he did not identify any tribes. Based on this information, the Agency reported that it sent notices on May 19, 2021. On May 20, 2021, the Agency filed Judicial Council Forms, form ICWA-030, Notice of Child Custody Proceeding for Indian Child, which was sent to the Sacramento Area Director of the Bureau of Indian Affairs.

The notice provided only the names and dates of birth of mother, father, and the child. On May 21, 2021, as part of an amended petition, the Agency filed Judicial Council Forms, form ICWA-010(A), stating that the Agency asked mother and father about the child's Indian status and that the inquiry "gave [social worker] reason to believe the child is or may be an Indian child."

On June 1, 2021, the Agency filed another addendum report, stating that a DNA test confirmed Joseph A. was Michaela H.'s biological father. Father appeared at the June 1, 2021, continued hearing and the juvenile court conducted a paternity inquiry. The juvenile court elevated father to presumed father. Father was not asked on the record about Native American ancestry. Mother did not appear. The Agency reported that mother was no longer incarcerated and her whereabouts were unknown.

On June 22, 2021, the Agency filed an ICWA cover sheet, attaching the reply from the Bureau of Indian Affairs, which stated that the notice contained insufficient information to determine tribal affiliation.

On July 2, 2021, the Agency filed an amended petition, which checked the box stating the social worker "asked . . . and on information and belief confirm[ed] that [she] completed inquiry by asking the child, the child's parents, and other required and available persons about the child's Indian status." The petition listed mother and father as the persons questioned. It further stated the social worker contacted the tribe(s) that the child may be affiliated with. The July 8, 2021, addendum report repeated the previously stated information about mother's and father's responses to the inquiry regarding Native American ancestry. It further stated that the Bureau of Indian Affairs responded to the Agency's notice stating that it had insufficient information to determine tribal affiliation. On July 8, 2021, father appeared in the juvenile court for the contested jurisdiction/disposition

4

hearing. Mother did not appear, and the Agency reported it was awaiting search results for mother. The hearing was continued to August 13, 2021. Neither the parties nor the court raised the ICWA issue.

On August 12, 2021, mother filed Judicial Council Forms, form ICWA-020, Parental Notification of Indian Status, stating that she had no Native American ancestry. The ICWA-020 form states in bold, "This form is not intended to constitute a complete inquiry into Indian heritage." The contested jurisdiction/disposition hearing was again continued, to August 24, 2021. On August 20, 2021, the Agency filed an addendum report, which stated ICWA may apply. The report reiterated mother's and father's prior responses to inquiries regarding Native American ancestry and again summarized the Bureau of Indian Affairs's response that it had insufficient information to determine tribal affiliation. Another addendum report was filed on August 24, 2021, which contained the same ICWA information as the August 20, 2021 report.

The contested jurisdiction/disposition hearing was held on August 24–25, 2021. Neither father nor mother was present at the August 24, 2021 hearing. The juvenile court continued the hearing to the next day after the Agency informed the juvenile court that it learned father was arrested in April 2021 for drug possession. Father appeared at the continued hearing on August 25, 2021. Mother did not appear. The juvenile court found true the allegations of the third amended petition, removed Michaela H. from the physical custody of both parents, and approved placement in a foster home. Reunification services were ordered for both parents. There was no discussion of ICWA by the parties or the juvenile court.

5

**DISCUSSION**

Father contends the Agency failed to conduct an adequate ICWA inquiry because it did not inquire of Michaela H.'s maternal grandmother and maternal uncle as to whether Michaela H. had Native American ancestry. He argues that under section 224.2, subdivision (b), the Agency was required to question extended family members as part of its initial inquiry. He also argues the juvenile court failed to ensure the Agency conducted an adequate inquiry. We find that the Agency's initial inquiry was incomplete and that the juvenile court failed to ensure ICWA compliance. Accordingly, we conditionally affirm the disposition order and remand for the Agency and the juvenile court to comply with ICWA and related California laws.

## I.    *ICWA Inquiry and Notice Requirements*

ICWA establishes minimum federal standards that a state court must follow before removing an Indian child from his or her family. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.) California incorporated ICWA's requirements into its statutory law. (*Ibid*.) Section 224.2 creates three distinct duties regarding ICWA in dependency proceedings. (*In re D.S.*, at p. 1052.)

The first duty is the initial duty to inquire, which is "an affirmative and continuing duty" imposed on both the juvenile court and the Agency. (§ 224.2, subd. (a).) Section 224.2, subdivision (b) provides that if a child is removed from his or her parents and placed in the custody of the Agency, the Agency has a duty to inquire whether the child is an Indian child and the inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an

6

interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ."

The juvenile court is also required to make an ICWA inquiry. (§ 224.2, subd. (c).) "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) Further, if the parent does not appear at the first hearing, the juvenile court "must order [the Agency] to use reasonable diligence to find and inform the parent . . . that the court has ordered the parent . . . to complete *Parental Notification of Indian Status* (form ICWA-020)." (Cal. Rules of Court, rule 5.481(a)(3).)

The duty of further inquiry arises when the Agency or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child . . . ." (§ 224.2, subd. (e).) A "reason to believe" exists if the Agency or the juvenile court "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) If the Agency or the juvenile court has a "reason to believe that an Indian child is involved in a proceeding," the court or Agency must "make further inquiry," which includes interviewing the parents and extended family members and contacting the Bureau of Indian Affairs for assistance in identifying the tribes in which the child may be a member or may be eligible for membership. (§ 224.2, subd. (e), (e)(2).)

7

Finally, if the inquiry gives the Agency or the juvenile court a "reason to know" the child is an Indian child, then notice pursuant to ICWA must be sent to the pertinent tribes. (§ 224.2, subd. (f).) There is a "reason to know" if "(1) A person having an interest in the child . . . informs the court that the child is an Indian child. [¶] (2) The residence . . . of the child, [or] the child's parents, . . . is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child . . . gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court; [or] [¶] (6) The court is informed that either parent or the child possess [*sic*] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

"The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings." (*In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57.) If the juvenile court finds "that proper and adequate inquiry, further inquiry, and due diligence were conducted under . . . section 224.2 and, if applicable, notice provided under . . . section 224.3, and the court determines there is no reason to know the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings." (Cal. Rules of Court, rule 5.482(c)(1); § 224.2, subd. (i)(2).) Any such finding must be reversed by the juvenile court "if it subsequently receives information providing reason to believe that the child is an Indian child," and the juvenile court must then "order the social worker . . . to conduct further inquiry under . . . section 224.3." (Cal. Rules of Court, rule 5.482(c)(2).)

## II.    *Analysis*

Father argues that the Agency's ICWA investigation was inadequate because it failed to ask the maternal grandmother and maternal uncle whether Michaela H. may be an Indian child as required by section 224.2.  As father notes, the Agency social worker was in contact with both the maternal grandmother and the maternal uncle, but the Agency reports do not state they were ever questioned regarding ICWA.  Father contends that the disposition order should be conditionally reversed and the matter remanded for ICWA compliance.

While acknowledging a split of authority, father urges us to follow case law holding that an agency's failure to comply with ICWA by failing to inquire of extended family members is prejudicial even where the appellant does not affirmatively represent the child has Indian ancestry.  (Compare *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 [holding parent does not need to assert he or she has Indian ancestry to show failure to inquire is prejudicial and stating, "It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim"] with *In re S.S.* (2022) 75 Cal.App.5th 575, 581–582 [discussing cases holding that an appellant complaining of inadequate ICWA inquiry must make an offer of proof or affirmative assertion of Indian heritage and holding that a parent is required to show " 'there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child' "]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744–745 [same].)

The Agency concedes that it was in contact with the maternal grandmother and maternal uncle regarding possible placement and visitation

9

but that there is no record the Agency made an ICWA inquiry of them. It argues the dispositional order should nevertheless be affirmed because mother denied any Native American ancestry and father has not shown that the Agency's failure to make inquiries of maternal extended family was prejudicial. According to the Agency, the order should be affirmed because father has not stated a belief that Michaela H. may be an Indian child and the record does not indicate there is "readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M., supra,* 70 Cal.App.5th at p. 744.)

On this record, we agree with the *In re Y.W.* line of authority holding that the Agency's failure to conduct an adequate inquiry is prejudicial. (*In re Y.W., supra,* 70 Cal.App.5th at p. 556.) The parties concede no inquiry was made of the maternal extended family, as expressly required by section 224.2, subdivision (b). The only persons questioned by the Agency regarding the potential applicability of ICWA were mother and father. The Agency's initial inquiry duty expressly requires the Agency to interview extended family members. (§ 244.2, subd. (b); see *In re H.V.* (2022) 75 Cal.App.5th 433, 438–439 [conditionally affirming and remanding disposition order with directions to interview extended family members].) The information from the maternal extended family members is likely to be at least meaningful in determining whether Michaela H. is an Indian child. (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 426, 435 ["In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child, regardless of whether the information ultimately shows the child is or is not an Indian child"].) Moreover, the Agency's reports dated August 20, 2021, and August 24, 2021, state that ICWA may apply. The record is equivocal and the ICWA inquiry was

10

statutorily incomplete. (§ 224.2, subd. (b).) Therefore, the error is prejudicial and remand is required. (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1016, 1018 [finding prejudice and remanding for ICWA compliance where extended family members were not interviewed].)

In addition to the Agency's errors, the juvenile court failed to ensure the Agency's ICWA inquiry was adequate and also failed to make any ICWA finding as to either parent.[4] "[C]ourts and county welfare departments 'have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been . . . filed is or may be an Indian child in all dependency proceedings . . . if the child is at risk of entering foster care or is in foster care.' " (*In re T.G.* (2020) 58 Cal.App.5th 275, 290; see § 244.2, subd. (a); Cal. Rules of Court, rule 5.481(a).) They also have a duty in every dependency proceeding to determine whether ICWA applies. (*In re H.V., supra,* 75 Cal.App.5th at p. 437.)

The juvenile court's duty includes asking the parents at their first court appearance whether they know or have reason to know the child is an Indian child (§ 224.2, subd. (c)), and if the parents do not appear, the court must order them to complete Judicial Council Forms, form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(3).) The reporter's transcripts do not reflect that the juvenile court made any inquiries or orders regarding ICWA. Mother completed the ICWA-020 form, but the record does not include an ICWA-020 form completed by father. We

---

[4] The Agency states in its respondent's brief that the juvenile court found that ICWA did not apply. However, it provides no record citation for this statement. Our own review of the record indicates that there is no mention of ICWA in the reporter's transcripts or in the juvenile court's minute orders following the detention hearing and the jurisdiction/disposition hearing.

11

recognize that father's appeal asserts error only as to the ICWA inquiry regarding mother. However, given that remand is required for the Agency to complete its initial inquiry regarding the maternal extended family members, in the interest of completeness and to avoid any possible delays in permanency planning for the child, we recommend that on remand, the juvenile court also order father to complete an ICWA-020 form and ensure that the Agency conducts any further inquiry that may be necessary.[5]

## DISPOSITION

The disposition order is conditionally affirmed and remanded to the juvenile court for the limited purpose of ensuring compliance with the inquiry provisions of Welfare and Institutions Code section 224.2 and, if necessary, the notice provisions of section 224.3. The juvenile court shall order that within 30 days of the remittitur, the Agency complete an inquiry investigation into the child's Indian ancestry by interviewing available extended family members. If the juvenile court issues an order determining that ICWA does not apply, the disposition order shall remain in effect. If the court determines ICWA applies, it shall vacate the disposition order and proceed in accordance with ICWA and related state law.

---

[5] We note that the Agency reported that father responded, " 'I assume,' " when the Agency asked him about possible Native American ancestry. This response was vague and somewhat ambiguous. Father's completion of the ICWA-020 form may provide clarifying information.

12

_____

Jackson, P. J.

WE CONCUR:

_____

Simons, J.

_____

Burns, J.

A163620/*Alameda County Social Services Agency v. Joseph A.*